|  |  |  |
|---|---|---|
| JAMES "JIM" TOMASIK, J. DANIEL TOMASIK, and LIBERTARIAN PARTY OF TENNESSEE, | ) ) ) ) | |
| ....Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:13-01118 |
|  | ) | Judge Nixon |
| MARK GOINS, Coordinator of Elections for the State of Tennessee; and TRE HARGETT, Secretary of State for the State of Tennessee, | ) ) ) ) | Magistrate Judge Griffin |
| ....Defendants. | ) ) | |

PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF
THEIR COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION

Plaintiff James "Jim" Tomasik successfully petitioned to appear on the Tennessee ballot for the Special General Election for Tennessee State House Seat for District 91 to be held on November 21, 2013. The Democratic candidate for House District 91 was decided on October 8, 2013, when Raumesh Akbari received 502 votes out of a total of 1,812 votes in unofficial returns. After the primary vote is officially tabulated, and assuming no irregularities, Ms. Akbari and James "Jim" Tomasik will be the only candidates to appear on the Tennessee ballot for House District 91. While Ms. Akbari will be listed as the candidate of the Democratic party, Mr. Tomasik will be listed as an Independent unless this Court grants injunctive relief so that he can be listed with his correct designation as a Libertarian. Mr. Tomasik was unable to petition to obtain ballot status as a representative of the Libertarian minor party because it is virtually impossible under the petition signature requirement, petitioning time, and petitioning deadline of

90 days before a general election for a minor party to get recognized because of the time constraints involved in special general elections.

The Tennessee election laws which specifically cause the foregoing unconstitutional result and which are in question herein are as follows:

**T.C.A. § 2-1-104. Title definitions.**

    **(a)** In this title, unless a different meaning is clearly intended:

    **(14)** "Political party" means an organization which nominates candidates for public office;

**T.C.A. § 2-1-104. Title definitions.**

    **(a)** In this title, unless a different meaning is clearly intended:

    **(24)** "Recognized minor party" means any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor, and on each page of the petition, state its purpose, state its name, and contain the names of registered voters from a single county;

**T.C.A. § 2-1-104. Title definitions.**

    **(a)** In this title, unless a different meaning is clearly intended:

    **(31)** "Statewide political party" means:

    **(A)** A political party at least one (1) of whose candidates for an office to be elected by voters of the entire state in the past four (4) calendar years has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor.

**T.C.A. § 2-5-208. Arrangement of material on ballots.**

    **(d)(1)** Notwithstanding any other provision of this chapter or this title, on general election ballots, the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority party, and recognized minor party, if any. The names of the political party candidates shall

be alphabetically listed underneath the appropriate column for the candidate's party. A column for independent candidates shall follow the recognized minor party, or if there is not a recognized minor party on the ballot, shall follow the minority party, with the listing of the candidates' names alphabetically underneath.

**T.C.A. § 2-13-107.  Recognition as a minor party.**

  **(a)(2)**  To be recognized as a minor party for purposes of a general election, a petition as required in § 2-1-104 must be filed in the office of the coordinator of elections no later than twelve o'clock (12:00) noon, prevailing time, ninety (90) days prior to the date on which the general election is to be held. The petition shall be accompanied by the name and address of the person or the names and addresses of the members of the group or association filing the petition to form the recognized minor political party.

**T.C.A. § 2-13-201.  Conditions for name being shown on ballot.**

  **(a)**  No person's name may be shown on a ballot as the nominee of a political party for the offices named in § 2-13-202 or for any office to be voted on by the voters of a county, unless the political party:

   **(1)** Is a statewide political party or a recognized minor party; and

   **(2)** Has nominated the person substantialy in compliance with this chapter.

**T.C.A. § 2-14-202.  Time of election – Vacancy in state senate.**

  **(a)** If twelve (12) months or more remain prior to the next regular election for members of the general assembly, the governor shall, by writs of election, order a special election to fill such vacancy.

  **(b)** The governor shall, by writs of election, set a date not less than fifty-five (55) nor more than sixty (60) days from the date of the writs for primary elections for nominations by statewide political parties to fill the vacancy and shall, by the same writs of election, set a date of not less than one hundred (100) nor more than one hundred seven (107) days from the date of the writs for a general election to fill the vacancy. Candidates for the primary elections and independent candidates for the general election shall qualify as required in regular elections but shall file qualifying petitions no later than twelve o'clock (12:00) noon prevailing time on the sixth Thursday before the day of the primary elections. Except where this subsection (b) makes different provisions, part 1 of this chapter shall govern elections required by this subsection (b). The state primary boards shall perform their duties under chapter 8 of this title with respect to primaries held under this subsection (b) as quickly as practicable, and shall certify the nominees of their

3

parties to the county election commissions no later than twelve o'clock (12:00) noon prevailing time on the thirty-fifth day before the day of the general election.

  **(c) (1)** If it is necessary to hold a special election to fill a vacancy in the membership of the general assembly, and the date for such election, as established under subsection (b), falls within thirty (30) days of a regular primary or general election being held in the legislative district, or alternatively falls within thirty (30) days of a municipal election being held in an odd-numbered year in a legislative district which is contained entirely within the boundaries of such municipality, the governor may issue the writ of election for the special election for the date which will coincide with the regular primary, general or municipal election.

  **(2)** If the date of the election is adjusted, as provided herein, all other dates dependent on the date of the election shall be adjusted accordingly, and any filing of candidacy, qualifying petitions, financial statements, or other acts shall be timely done if performed in accordance with the revised dates.

  **(d) (1)** If a vacancy occurs in the state senate in a seat with more than two (2) years remaining in the term, but less than twelve (12) months before the next general election for members of the general assembly, candidates for the primary elections and independent candidates shall qualify at the regular qualifying deadline for state elections.

  **(2)** If a vacancy as described in subdivision (d)(1) occurs after the seventh day before the regular qualifying deadline for statewide offices, candidates for the primary elections and independent candidates shall file the necessary qualifying petitions before twelve o'clock (12:00) noon, prevailing time, on the sixth Thursday before the day of the primary election. Any candidate wishing to withdraw shall do so before twelve o'clock (12:00) noon, prevailing time, on the fourth day after the qualifying deadline.

  **(3)** If a vacancy as described in subdivision (d)(1) occurs after the sixth Thursday before the primary election, the members of the county executive committees who represent the precincts composing such senate district may nominate a candidate to appear on the November election ballot by any method authorized under the rules of the party.  The procedure to be followed by an executive committee shall be the same as set forth in § 2-13-204(b)(4). Persons so chosen shall be certified to every county election commission wholly or partially in the district by twelve o'clock (12:00) noon, prevailing time, on the forty-fifth day prior to the regular November election. Independent candidates shall qualify by filing petitions as provided for in § 2-5-104 by twelve o'clock (12:00) noon, prevailing time, on the forty-fifth day prior to the regular November election. Any candidate wishing to withdraw shall do so before twelve o'clock (12:00) noon, prevailing time, on the fourth day after the qualifying deadline.

> **(4)** If a vacancy as described in subdivision (d)(1) occurs within forty-five (45) days of the next general election for legislators, the candidate receiving the highest number of write-in votes at such election shall be elected.

## I. STATEMENT OF THE CASE AND HISTORY OF PERTINENT CHANGES IN TENNESSEE BALLOT ACCESS LAW

This proceeding seeks a judgment declaring the aforesaid Tennessee election laws as applied to the Plaintiffs for the 2013 Tennessee Special General Election for State House District 91 on November 21, 2013, and all subsequent special general elections in the State of Tennessee and the facts and circumstances relating thereto, unconstitutional in that they violate in their application to the Plaintiffs herein for the aforesaid 2013 Tennessee Special General Election, and all subsequent Tennessee Special General Elections, the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983. Plaintiffs request a preliminary injunction against Defendants placing James "Jim" Tomasik's name on the Special General Election ballot as a Libertarian rather than an Independent.

This Court has previously held the number of petition signatures required to form a new political party when combined with an unconstitutionally early deadline, to be unconstitutional, even after subsequent revisions and modifications by the Tennessee legislature. *Libertarian Party of Tennessee v. Goins*, 793 F.Supp.2d 1064 (M.D. Tenn. 2010); *Green Party of Tennessee v. Hargett*, 882 F.Supp.2d 959 (M.D. Tenn. 2012), rev'd., *Green Party of Tennessee v. Hargett*, 700 F.3d 816 (6th Cir. 2012), and decided again after remand in Case No. 3:11-cv-00692 on June 18, 2013, *Green Party of Tennessee v. Hargett*, __ F.Supp.2d __ (M.D. Tenn. 2013), and subsequently again appealed to the U.S. Court of Appeals for the Sixth Circuit.

Whatever should be decided by the Sixth Circuit in the latest appeal, the State legislature has previously responded to this Court's former rulings by providing a means for minor parties to

nominate candidates for partisan office by means other than a primary election and with the minor party being allowed to obtain minor party status by petitioning. However, while many months are available to petition under normal circumstances, it is impossible for a minor party to get recognition for its minor party candidate for a special general election because the combined laws in question challenged herein leave less than 17 days to actually petition. Thus, minor party candidates are forced to appear on the ballot as Independent candidates and Tennessee voters are denied valuable information in trying to cast their votes effectively.

## II. STANDARD OF REVIEW

In deciding whether or not to grant Plaintiffs' Motion for Preliminary Injunction filed herein, the Trial Court must consider both the standard of review to be applied to a preliminary injunction request as well as the standard of review required in a ballot access case. In order to demonstrate entitlement to a preliminary injunction, four criteria must be considered by the Court: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *McGlone v. Bell*, 681 F.3d 718, at 735-736 (6th Cir. 2012), citing *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)(quoting *Rock & Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). Also see, *Hunter v. Hamilton County Bd. Of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). These factors are to balanced and do not receive rigid application or an assignment of equal weight. *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir. 1995)("those four considerations are, however, 'factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may

depend on the strength of the other factors.'") (citation omitted). For the likelihood of success factor, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 402 (6th Cir. 1997) (affirminig grant of preliminary injunction)(citation omitted). *Planned Parenthood Greater Memphis v. Dreyzehner*, 853 F.Supp.2d 724, 733 (M.D.Tenn. 2012).

Because the Plaintiffs would suffer irreparable injury if they were not able to gain ballot access for Mr. Tomasik as a Libertarian candidate for the Tennessee Special General Election ballot on November 21, 2013, for State House District 91, and, voters would have to cast their votes less effectively because they would not have a fully informed labeling of Mr. Tomasik when compared to his Democratic opponent, there is no possible constitutionally recognized injury to the Defendants which would be greater than the grave injury to the fundamental rights which Plaintiffs would suffer in the case at bar, and issuance of the proposed preliminary injunction would be in the public interest rather than adverse to the public interest. In deciding whether or not to grant Plaintiffs' request for a preliminary injunction, the Trial Court should concentrate primarily on the issue of whether or not the Plaintiffs are likely to prevail on the merits in the instant case. Thus, the Court should next look to the standard of review in judging ballot access laws which impact small political parties seeking state recognition.

In ballot access cases involving a burden on fundamental rights, the appropriate standard of review is strict scrutiny. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); and *Williams v. Rhodes*, 393 U.S. 23 (1968). Since the case at bar involves ballot access restrictions that do burden minority political parties, and the corresponding constitutional right of individuals to political expression and association, the appropriate standard of review which is required by this

7

Court is strict scrutiny, so that State laws cannot stand unless they "further compelling State interests . . . that cannot be served equally well in significantly less burdensome ways." *American Party of Texas v. White,* 415 U.S. 767, at 780-781. More specifically, the appropriate standard of review is the analytical test applied by the United States Supreme Court in *Anderson v. Celebrezze*, *Id.*. In *Anderson* the United States Supreme Court set forth a standard to be used in determining whether election laws are unconstitutionally oppressive of potential voter's rights. The Supreme Court held that such constitutional challenges to specific provisions of a state's election laws cannot be resolved by litmus-paper tests that will separate valid from invalid restrictions, but rather that the Trial Court ". . . must resolve such a challenge by an analytical process that parallels its work in ordinary litigation." *Anderson v. Celebrezze*, 460 U.S. at 789. The Supreme Court then set forth three criteria which the Trial Court is expected to follow:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rules. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the Plaintiff's rights. Only after weighing all these facts is the reviewing Court in a position to decide whether the challenged provision is unconstitutional. *Anderson v. Celebrezze*, 460 U.S. at 789.

Thus, the Supreme Court has set forth the standard which the Trial Court is to use in analyzing specific provisions of ballot access laws as are involved in the instant action. The Court further stressed that ". . . because the interests of minor parties and independent candidates are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decisionmaking may warrant more careful judicial scrutiny." *Anderson v. Celebrezze*, 460 U.S. at 793, n. 16.

## III. ARGUMENTS AND AUTHORITIES

Tennessee's ballot access laws, as argued above, have previously been declared unconstitutional by this Court. The Tennessee legislature has tried to remedy these Constitutional deficiencies by changing the laws for new and minor parties, but has failed to satisfy this Court. Further, the Tennessee legislature seems to have overlooked the particular problem presented for a minor party to get its candidate on the ballot for a special general election. If the law for new or minor parties to obtain ballot status in Tennessee under normal election circumstances is Constitutionally suspect, then the situation presented for a minor party candidate's recognition for a special general election is definitely Constitutionally infirm. It is undisputed that restrictions on access to the election ballot burden two distinct and fundamental rights, ". . . the right of individuals to associates for the advancement of political beliefs, the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes,* 393 U.S. at 30. "The freedom to associate as a political party, a right we have recognized as fundamental [*Williams v. Rhodes,* 393 U.S. at 30-31], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974); "*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 184 (1979).

When these fundamental, constitutionally protected rights are unreasonably or unfairly limited or denied, relief is available to set aside restrictions or denial in an action such as the instant case. It is the contention of the Plaintiffs urging this lawsuit that the State of Tennessee has gone too far in infringing the Plaintiffs' rights to political association and ballot access for special general elections. The teaching of the United States Supreme Court is that:

9

> "even when pursuing a legitimate interest, a state may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51 (1973), and we have required that states adopt the **least drastic means** to achieve their end. *Lubin v. Panish,* 415 U.S. at 716 . . .; *Williams v. Rhodes,* 393 U.S. at 31-33 . . .. **This requirement is particularly important where restrictions on access to the ballot are involved.** The states' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [emphasis added] *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted]. If the state has open to it a least drastic way of satisfying its legitimate interest, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties. *Shelton v. Tucker*, 364 U.S. 479 [1960]." K*usper v. Pontikes,* 414 U.S. at 58-59. In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the classification." *Storer v. Brown*, 415 U.S. 724, at 730 (1974), citing *Williams v. Rhodes, Id.*, and *Dunn v. Blumstein*, 405 U.S. 330 (1974). Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977) and *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980). It is of significance that Tennessee seems to be willing to encourage Independent candidates for special general elections, but require a 90 day deadline for petition signatures to get a candidate on the special general election ballot as a minor party candidate after in effect allowing between 10 to 17 days at most to petition for registered Tennessee voters equal to 2½ percent of the last gubernatorial vote.

Tennessee's unnecessarily early petition deadline coupled with the high petition signature requirement and the greatly reduced petitioning time for special general elections is

10


unconstitutional, lacks any compelling interest, and unequally and unfairly impacts in a discriminatory manner the rights of small, minor, unrecognized political parties in Tennessee. See, *Libertarian Party of Tennessee v. Goins,* 793 F.Supp.2d 1064 (M.D. Tenn. 2010) (holding unconstitutional Tennessee's deadline 120 days prior to the primary coupled with a 2½ percent petition requirement and party membership for petition signers).[1]

While Plaintiff Jim Tomasik will be on the ballot as an Independent candidate for the House District 91 Special General Election, the United States Supreme Court has stated that "The political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown,* 415 U.S. at 745. It might well be wondered if Tennessee, . . . is willing to encourage minority political voices, but only if they are partially stripped of a legitimizing party label." *McLain v. Meier,* 637 F.2d at 1165, n.12. "A candidate who wishes to be a party candidate should not be compelled to adopt Independent status in order to participate in the electoral process." *McLain v. Meier*, 637 F.2d at 1165.

As the United States Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance— against those voters whose political preferences lie outside the existing political parties . . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. Historically,

---

[1] Subsequently, the Tennessee Legislature after the *Goins* decision removed the party membership requirement for petition signers, kept the 2.5% petition requirement, and created a 119 day deadline before the primary election. This new law was declared unconstitutional on February 3, 2012, in the case of *Green Party of Tennessee v. Hargett*, 882 F.Supp.2d 959 (M.D. Tenn. 2012), with the Court ordering the minor political parties placed on the Tennessee ballot and stating—among other relief--that any deadline in excess of 60 days prior to the primary for the filing of petitions for recognition as a political party is unenforceable. While *Hargett* was subsequently reversed in part, 700 F.3d 816 (6th Cir. 2012), the case was decided again on remand and again appealed to the Sixth Circuit Court of Appeals.

11

political figures outside the two major parties have been fertile sources of new ideas and new programs; many other challenges to the status quo have in time made their way into the political mainstream. . . . In short, the primary values protected by the First Amendment--"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, at 270 (1964)—are served when election campaigns are not monopolized by the existing political parties. *Anderson v. Celebrezze*, 460 U.S. at 793-794.

## IV. CONCLUSION

Because of the minimal petitioning time that is available for a minor party to obtain ballot status for its candidate with a listing as a member of that minor party in a special general election, the Tennessee election laws complained of hereinabove and in their complaint filed herein are unconstitutional in their application to the Plaintiffs for the Special General Election for State House District 91 to be held on November 21, 2013. While the Tennessee legislature has attempted to amend the laws in question to comply with past rulings of this Court, the legislature has apparently overlooked the particular problem presented by special general elections and the greatly reduced petitioning time for such circumstances. At least one United States Court of Appeals has found amended election codes unconstitutional as applied to a current election year because of the lessening of time to petition. *Blomquist v. Thomson*, 539 F.2d at 528-529. In the case at bar, this Court should grant Plaintiff's Motion for Preliminary Injunction and order James "Jim" Tomasik's name on the aforesaid Special General Election ballot for State House District 91 to be listed on the ballot as a Libertarian, and such other and further relief as the Court finds equitable and just.

WHEREFORE, premises considered, the Plaintiffs herein pray that this Court will grant them the relief requested in their Complaint and grant Plaintiffs' Motion for Preliminary Injunction forthwith.

12

Case 3:13-cv-01118   Document 12   Filed 10/15/13   Page 12 of 13 PageID #: 54

Respectfully submitted this 15th day of October, 2013.

/s/ James C. Linger
James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, Tennessee 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
Email: bostonbarristers@tulsacoxmail.com

W. Gary Blackburn, BPR No. 3484
213 Fifth Avenue N., Suite 300
Nashville, TN 37219
(615) 254-7770
(866) 895-7272 Facsimile
Email: gblackburn@wgaryblackburn.com

*Counsel for Plaintiffs*

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 15th day of October, 2013. Additionally, I hereby certify that on this 15th day of October, 2013, a true and exact copy of the foregoing was e-mailed to Janet Kleinfelter, Senior Counsel, Office of Tennessee Attorney General at janet.kleinfelter@tn.gov.

/s/ James C. Linger
James C. Linger